UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ANTHONY RODRIGUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:23-cv-000102 |
| | § | |
| BBB INDUSTRIES, LLC, | § | |
| | § | |
| Defendant. | § | |

## ORDER AND OPINION

The Court now considers "Defendant's Motion for Summary Judgment."[1] Plaintiff has responded[2] and Defendant has filed a reply.[3] After considering the motion, record, and relevant authorities, the Court **GRANTS** summary judgment in favor of Defendant.

### I. Factual and Procedural Background

This is an employment case. Plaintiff Anthony Rodriguez alleges that during his time employed by Defendant BBB Industries, LLC, he "was subjected to discriminatory animus, disparate treatment and/or a hostile work environment on account of his age (52; DOB 06/16/1969), on account of his gender (male), on account of his race (Hispanic), on account of his national origin (Mexican-American) and/or for engaging in protected activity."[4]

This matter was originally filed in state court and removed by Defendant on the basis of diversity jurisdiction.[5] Plaintiff alleges violations "under the Texas Constitution and the Texas

---

[1] Dkt. No. 18.
[2] Dkt. No. 19.
[3] Dkt. No. 20.
[4] Dkt. No. 1-2 at 7-8, ¶ 6.1.
[5] Dkt. No. 1.

Labor Code – specifically Section 21.001 et. seq. of the Texas Labor Code as well as the common law of the sovereign State of Texas" and has "affirmatively aver[red] that he has not alleged any federal cause of action."[6]

## II. Discussion

### a. Legal Standard

Federal Rule of Civil Procedure 56 provides that a court has the ability to grant summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] The primary purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses" and should be interpreted to accomplish this purpose.[8]

To earn summary judgment, the movant must demonstrate that there are no disputes in regard to genuine and material facts and that the movant is entitled to summary judgment as a matter of law.[9] "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."[10] The movant "bears the initial burden of . . . demonstrat[ing] the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case."[11] In other words, a movant may satisfy its burden by pointing out the absence of evidence to support the nonmovant's case if the nonmovant would bear the burden of proof with respect to that element

---

[6] Dkt. No. 1-2 at 7, ¶ 5.1.
[7] FED. R. CIV. P. 56(a); *see Bulko v. Morgan Stanley DW Inc.*, 450 F.3d 622, 624 (5th Cir. 2006).
[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
[9] *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993).
[10] *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986), *quoted in Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002); *accord Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 241 (5th Cir. 2006) (holding that, if the movant intends to rely on an affirmative defense, "it must establish beyond dispute all of the defense's essential elements").
[11] *Lynch Props. v. Potomac Ins. Co., 140 F.3d 622, 625* (5th Cir. 1998).

at trial.[12] To demonstrate the absence of a genuine dispute of material fact, the movant must point to competent evidence in the record, such as documents, affidavits, and deposition testimony[13] and must "articulate precisely how this evidence supports his claim,"[14] to "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[15] If the movant fails to meet its initial burden, the motions for summary judgment "must be denied, regardless of the nonmovant's response."[16] Accordingly, the Court may not enter summary judgment by default,[17] but may accept a movant's facts as undisputed if they are unopposed.[18]

If the movant meets its initial burden, the nonmovant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts" that demonstrate the existence of a genuine issue for trial.[19] The nonmovant's demonstration cannot consist solely of "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation"[20] and a "mere scintilla of

---

[12] *Celotex Corp.*, 477 U.S. at 325; *see Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted) ("Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial.").

[13] FED. R. CIV. P. 56(c)(1); *see Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted) ("The movant . . . must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.").

[14] *RSR Corp. v. Int'l Ins. Co.,* 612 F.3d 851, 857 (5th Cir. 2010).

[15] *Celotex Corp.*, 477 U.S. at 322 (quoting FED. R. CIV. P. 56(c)).

[16] *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.,* 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted).

[17] *Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).

[18] *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *see* LR7.4 ("Failure to respond to a motion will be taken as a representation of no opposition")

[19] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) ("[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."); *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991) ("[T]he party responding to a summary judgment motion must support her response with specific, non-conclusory affidavits or other competent summary judgment evidence.").

[20] *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (quoting *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).

evidence" also will not do.[21] Even if the nonmovant produces more than a scintilla of evidence in its favor, such evidence may be "so overwhelmed by contrary proof" that summary judgment is still proper in favor of the movant.[22] The Court does not need to "credit evidence that is 'blatantly contradicted by the record,' especially by video or photographic evidence."[23] Neither self-serving allegations nor conclusory affidavits can defeat a motion for summary judgment supported by probative evidence.[24] "[T]he nonmoving party must adduce evidence sufficient to support a jury verdict."[25] The Court will countenance only reasonable inferences in the nonmovant's favor and will not indulge "senseless" theories or leaps in logic.[26] The nonmovant is "required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim."[27] "A failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists."[28] Courts "will not assume 'in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts,' and will grant summary judgment 'in any case where critical evidence is so weak or tenuous on an essential fact that it

---

[21] *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010); *accord Germain v. US Bank Nat'l Ass'n*, 920 F.3d 269, 272 (5th Cir. 2019).
[22] *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996) (quoting Neely v. *Delta Brick and Tile Co.*, 817 F.2d 1224, 1226 (5th Cir. 1987)), *abrogated on other grounds by Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000).
[23] *Malbrough v. Stelly*, 814 F. App'x 798, 804 (5th Cir. 2020) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).
[24] *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 227 (5th Cir. 2018); *see Cadena v. El Paso County*, 946 F.3d 717, 725 (5th Cir. 2020) ("[A]ffidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment.").
[25] *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).
[26] *See Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 468–69 & n.14 (1992).
[27] *Ragas*, 136 F.3d at 458 (emphasis added).
[28] *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006); *see Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quotation and alteration omitted) ("When the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case."); *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992) ("To avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case.").

could not support a judgment in favor of the nonmovant.'"[29] The Court is under no duty to sift through the entire record in search of evidence to support the nonmovant's opposition to summary judgment.[30]

"A fact is 'material' if its resolution could affect the outcome of the action,"[31] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[32] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[33] "Although this is an exacting standard, summary judgment is appropriate where the only issue before the court is a pure question of law."[34] The Court does not weigh the evidence or evaluate the credibility of witnesses and views all facts and inferences in the light most favorable to the nonmovant,[35] including "resolv[ing] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[36]

### b. Analysis

In the motion for summary judgment before the Court, Defendant argues generally that

> the uncontroverted evidence reveals that Plaintiff precipitously resigned for no good reason, and certainly not for a reason rising to the level of constructive discharge. Prior to his resignation, Plaintiff had a few workplace disputes with co-workers involving nothing more than unactionable teasing, offhand comments, and isolated incidents, which – in any event – the employer addressed by discussing with his coworkers and assigning Plaintiff to a new role which he, admittedly, did

---

[29] *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).
[30] *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996); *accord Adams Family Tr. v. John Hancock Life Ins. Co.*, 424 F. App'x 377, 380 n.2 (5th Cir. 2011).
[31] *Burrell v. Dr. Pepper/Seven UP Bottling Grp.*, 482 F.3d 408, 411 (5th Cir. 2007).
[32] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006); *see Bache v. Am. Tel. & Tel. Co.*, 840 F.2d 283, 287 (5th Cir. 1988) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) ("[T]o determine if an issue of material fact is genuine, we must then decide whether 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'").
[33] *Anderson,* 477 U.S. at 248.
[34] *Sheline v. Dun & Bradstreet Corp.,* 948 F.2d 174, 176 (5th Cir. 1991).
[35] Williams v. Time Warner Operation, Inc., 98 F.3d 179, 181 (5th Cir. 1996).
[36] *Boudreaux*, 402 F.3d at 540.

well in, was not ill-treated, never complained about any issues in this new role, and was provided the same pay, benefits and other material terms of employment.[37]

[] Plaintiff never suffered the type of harassment which could sustain a constructive discharge claim. More fundamentally, he suffered no actionable harassment at all and, in any event, such an underlying claim essentially is time-barred. Accordingly, the standard for a constructive discharge is not met in this case. Even so, that Plaintiff's underlying harassment claim also fails on the merits and because it is time-barred further demonstrates that a constructive discharge claim also fails as a matter of law.[38]

Plaintiff argues that Defendant's motion fails to correctly address the issues at hand in this matter. More specifically, Plaintiff argues that "[he] has demonstrated to this court that various fact issues undoubtedly exist that necessarily defeat summary judgment he [sic] establishment of a *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee."[39] Therefore, Plaintiff argues that because the *prima facie* case has been established, the "burden of production falls to the employer to articulate a legitimate, nondiscriminatory reason for any alleged unequal treatment."[40]

While Plaintiff's analysis of the burden shifting framework in an employment discrimination case may be generally correct, Plaintiff's conclusory allegation that the *prima facie* case has been met in this case is exactly what Defendant argues against. As mentioned above, Defendant asserts that Plaintiff has failed to demonstrate that a constructive discharge has occurred. Thus, the Court first addresses the constructive discharge.

Under the Texas Labor Code,

"[a]n employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age . . . the employer discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or limits, segregates, or classifies an employee or applicant for employment in a manner that

---

[37] Dkt. No. 18 at 1-2.
[38] *Id.* at 2.
[39] Dkt. No. 19 at 9.
[40] *Id.*

would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee."[41]

Regardless of the fact that Plaintiff has not brought federal claims in this matter, the federal statute is very similar to the Texas statute. The Texas Supreme Court has explained the relationship between the state and federal statutes by stating that "[o]ne of [the Texas Commission on Human Rights Act]'s purposes is to 'provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments.' Therefore, analogous federal statutes and the cases interpreting them guide our reading of the TCHRA."[42]

As for federal discrimination claims, the Fifth Circuit has explained the applicable Title VII analysis.

> Our holding today that the mixed-motives analysis used in Title VII cases post-*Desert Palace* . . . represents a merging of the *McDonnell Douglas* and *Price Waterhouse* approaches. Under this integrated approach, called, for simplicity, the modified *McDonnell Douglas* approach**: the plaintiff must still demonstrate a prima facie case of discrimination**; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate [or disparately treat] the plaintiff; and, if the defendant meets its burden of production, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact 'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive[s] alternative).'"[43]

To establish a *prima facie* case of discrimination, Plaintiff must "provid[e] evidence 'that []he: (1) is a member of a protected class; (2) was qualified for h[is] position; (3) *was subject to an adverse employment action*; and (4) was replaced by someone outside the protected class,' or, in the case of disparate treatment, shows 'that others similarly situated were treated more favorably.'"[44]

---

[41] TEX. LAB. CODE § 21.051(1).
[42] *Quantum Chemical Corp. V. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001) (internal citations omitted).
[43] *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (internal citations omitted) (emphasis added).
[44] *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512-513 (5th Cir. 2001) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999) (emphasis added)).

Plaintiff was employed by Defendant on two separate occasions. First, Plaintiff was hired in June of 2011[45] as a "logistics manager" in the company's Reynosa, Mexico facility. Plaintiff was laid off due to COVID-19 on April 14, 2020.[46] Plaintiff was then rehired by Defendant in February of 2021[47] as a "northbound warehouse coordinator"[48] at the company's facility in Pharr, Texas. The Pharr facility was divided into two warehouses, the north and the south warehouse.[49] Plaintiff was assigned to the north warehouse.[50] Plaintiff explained in his depositions that the north warehouse was "a little bit more fast-paced . . ." compared to the south warehouse.[51] The assertion was supported by the declaration of Kellie Kirby, the former Director of Logistics at BBB Industries, LLC.[52] Therein, Ms. Kirby further noted that "Mr. Rodriguez was assigned forklift duties at the north warehouse, where his work primarily involved transferring pallets to outbound trucks and getting the related paperwork finalized to get drivers on their way."[53] In July 2021, Plaintiff's performance problems were reported to Ms. Kirby by his supervisor. "The performance problems included: lack of speed, accuracy, damaging pallets, avoiding heavy work by hiding in the office, and a refusal to be instructed or 'learn.' Nevertheless, given a shortage of workers, BBB continued on with Mr. Rodriguez's employment."[54] Unrelated to the instant matter, in response to receiving complaints about Plaintiff's supervisor, Ms. Kirby traveled to the facility to meet with the employees, including Plaintiff.[55] "Although the interview concerned unrelated complaints about Mr. Lemus, Mr. Rodriguez did not complain about any unfair treatment or alleged

---

[45] Dkt. No. 18-1 at 6,
[46] *Id.* at 17.
[47] *Id.* at 18-19.
[48] *Id.* at 22.
[49] *Id.* at 19.
[50] *Id.*
[51] *Id.* at 30.
[52] Dkt. No. 18-3 at 2, ¶ 10.
[53] *Id*, ¶ 11.
[54] *Id*, ¶¶ 12 -14.
[55] *Id.* at 2, ¶ 14.

discrimination or harassment directed specifically at him."[56] Plaintiff's previous supervisor was then replaced with a supervisor by the name of Mr. Garza.[57] Around July 2021, Defendant decided to cross-train all forklift personnel in both the north and south warehouses so that they might be able to fill in at the non-assigned warehouse during absences or when help was needed.[58] Around that same time, Plaintiff complained about an incident involving two coworkers in the north warehouse.[59] According to Mr. Garza, the new supervisor, it was reported to him by the two coworkers in question

> that, in May 2021 (before [he] was hired), the two of them found [Plaintiff] outside on the clock watching same-sex porn videos. One or both of them, according to [Plaintiff's] comments to [Mr. Garza], thereafter (but still in May 2021) made fun of Mr. Rodriguez about the video, but [Plaintiff] only complained to [Mr. Garza] about a single inappropriate comment made to him.[60]

According to Plaintiff, the two coworkers used derogatory terms directed toward Plaintiff when speaking to him more than five times but he could not recall whether it was more than ten times.[61] Mr. Garza states that he then met with the two coworkers and told them to stop the "teasing and to keep communications with [Plaintiff] work-related, which they agreed to do."[62] Mr. Garza "then re-visited the matter with [Plaintiff], and [Plaintiff] thanked [Mr. Garza] for addressing the issue."[63] Mr. Garza further instructed Plaintiff "to keep conversations with the others business-related, and to let [Mr. Garza] know if any more teasing occurred. [Plaintiff] thanked [Mr. Garza] and indicated he certainly would raise any other issues with [Mr. Garza]."[64] Mr. Garza further

---

[56] *Id.* at 3, ¶ 15.
[57] *Id.* at 3, ¶ 18.
[58] *Id.* at 3, ¶ 19.
[59] Dkt. No. 18-4 at 2, ¶ 2.
[60] *Id.* at 2, ¶¶ 11-12.
[61] Dkt. No. 18-1 at 86.
[62] Dkt. No. 18-4. at 3, ¶ 13.
[63] *Id.* at 3, ¶ 14.
[64] *Id.*

informs the Court that "despite speaking with [Plaintiff] nearly every day he worked, [he] never received another complaint from him along similar lines."[65] Further, according to Mr. Garza,

> [i]n September 2021, more issues surfaced between [Plaintiff], on the one hand, and his co-workers in the North warehouse, Mr. Molina and Mr. Villarreal — namely, those two informed me that [Plaintiff] was not working, altering documents to make it seem like he was working more than he was, and being unreceptive to discussing work-related items (like turning his back and walking away). Apparently, [Plaintiff] complained to HR (Ms. Secily Dumas) about those two workers as well.[66]

Plaintiff alleges that he "continuously made complaints to human resources concerning a hostile work environment and discriminated [sic] conduct of my coworkers."[67] For example, Plaintiff sent Ms. Dumas an email stating amongst other things, "I need to advise you of something going on here at the warehouse. First, Lazaro takes a picture of me while I was talking to a driver."[68]

Mr. Garza then met with Plaintiff and the two coworkers about the issues in late September or early October 2021.[69] Plaintiff admits to the meeting occurring but states that he does not remember the content of the meeting nor when it occurred.[70] Mr. Garza asserts that "[d]uring the meeting, Mr. Rodriguez was rude and sat with his back turned away and was quite dismissive."[71] However, Mr. Garza further asserts that "[n]o one, including Mr. Rodriguez, brought up any discriminatory or harassing conduct."[72] Regardless, Mr. Garza alleges that it was apparent to him "that the work relationship was significantly fractured on this north warehouse team."[73] Thus, Mr. Garza spoke to Ms. Kirby and made the decision to move Plaintiff to the south warehouse.[74] In

---

[65] *Id.* at 3, ¶ 15.
[66] *Id.* at 3, ¶ 16.
[67] Dkt. No. 18-1 at 40.
[68] *Id.* at 43.
[69] Dkt. No. 18-4 at 3, ¶ 17.
[70] Dkt. No. 18-1 at 87-88.
[71] Dkt. No. 18-4 at 3, ¶ 17.
[72] *Id.*
[73] *Id.* at 3, ¶ 18.
[74] *Id.* at 3, ¶ 19.

part, that decision was made after considering that Plaintiff had been cross-training in the south warehouse, "there were no complaints from other workers there (or from him about them), and the solution would seemingly bring harmony to the North warehouse as well. Also, Mr. Rodriguez seemed to have a better relationship with the other South warehouse forklift operators, Ms. Tellez and Mr. Coronado."[75]

Plaintiff alleges that "Human resources and Kellie Kirby failed to address my concerns, and further subjected me to discrimination in that I am a Hispanic male, who was tossed aside with non-Hispanic females, who rather than assist me, moved me to a different position and further placed me on a performance improvement plan."[76]

At the south warehouse, Plaintiff was paid the same wage.[77] While his work shift changed from 9-4 to 8-5, Plaintiff reports that it did not cause him any problems.[78] However, Plaintiff stated that the issue was that he was the only employee at the south warehouse on a performance plan.[79] Plaintiff informed Defendant that he did not think that the move to the south warehouse and placement on a performance plan was fair.[80] Plaintiff states that he believes that he was moved to the south warehouse by Defendant in an effort to get him to quit and further believed that the south warehouse was a worse job.[81] However, Plaintiff admits that he performed fine at the south warehouse and was left alone by his coworkers.[82] Further Plaintiff admits that he did not raise complaints about the performance plan after Mr. Garza handed it to him.[83]

---

[75] *Id.* at 4, ¶ 20.
[76] Dkt. No. 18-1 at 90.
[77] *Id.* at 82
[78] *Id.*
[79] *Id.*
[80] *Id.* at 93.
[81] *Id.* at 94.
[82] *Id.* at 95.
[83] *Id.* at 102.

On November 30, 2021 Ms. Kirby received a resignation letter from Plaintiff which she declares came as a surprise.[84] She asserts that Plaintiff "had not complained about any problems, supposed discrimination or otherwise, while working at the south warehouse."[85] Likewise Mr. Garza and Ms. Dumas allege that they did not receive any complaints after Plaintiff's move to the south warehouse.[86] Plaintiff does not dispute that he submitted a resignation letter.

To demonstrate constructive discharge, a plaintiff must show "working conditions [] so intolerable that a reasonable person in the employee's position would have felt compelled to resign[.]"[87]

> Whether a reasonable employee would feel compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not.

The only element of constructive discharge that Plaintiff has come close to showing is the 3rd element, reduction in job responsibilities. Both parties have stated that the south warehouse was a slower paced warehouse. However, considering the performance issues that Plaintiff was experiencing, it seems clear to the Court that the move actually assisted Plaintiff in succeeding in his employment at BBB. Plaintiff did not receive a demotion because his position remained the same. Likewise Plaintiff's salary remained the same. There is no indication that he was reassigned to menial or degrading work. Plaintiff's supervisor remained the same at both locations. There is no indication of badgering, harassment, or humiliation by the employer. Finally, there is no allegation of any attempt to coerce Plaintiff into early retirement. Considering the totality of the

---

[84] Dkt. No. 18-3 at 5, ¶ 36.
[85] *Id.* at 5, ¶ 37.
[86] Dkt. No. 18-4 at 5, ¶ 33; Dkt. No. 18-2 at 4, ¶ 26.
[87] *Pennsylvania State Police v. Suders*, 542 U.S. 129, 124 S. Ct. 2342, 2345 159 L. Ed. 2d 204 (2004)

factors, the Court does not find that Plaintiff's working conditions were so intolerable that a reasonable employee would have felt compelled to resign. [88] While that list is not exclusive, Plaintiff has introduced no evidence sufficient to raise a genuine dispute on any other basis for constructive discharge. Thus, Plaintiff has not shown the constructive discharge element of his *prima facie* case.

### III. CONCLUSION AND HOLDING

For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary judgment. Plaintiff cannot prove any of his claims as a matter of law. This case will terminate upon entry of final judgement.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 15th day of May 2024.

_____
Micaela Alvarez
Senior United States District Judge

---

[88] *See Brown v. Bunge Corp.*, 207 F.3d 776 (5th Cir. 2000) (The Court found that it could not "conclude that [Plaintiff's] working conditions were so intolerable that a reasonable employee would have felt compelled to resign" even after it found that Plaintiff "clearly proved two of the constructive discharge factors: when he returned to work as a supervisor in the processing department, this represented a demotion and involved fewer job responsibilities than serving as superintendent of a department. On the other hand, four of the constructive discharge factors were not present.").